**Marcia MILLER, Appellant,**

v.

**AMERICAN COALITION OF CITIZENS WITH DISABILITIES, INC., et al., Appellees.**

**No. 83–1454.**

District of Columbia Court of Appeals.

Argued Oct. 18, 1984.

Decided Dec. 11, 1984.

Barry Rosenthal, Washington, D.C., for appellant.

Vincent G. Macaluso, Washington, D.C., for appellees.

Before NEBEKER, NEWMAN, and FERREN, Associate Judges.

FERREN, Associate Judge:

Appellant Marcia Miller, a former employee of appellee American Coalition of Citizens with Disabilities, Inc. (ACCD), sued ACCD and its directors and officers for reinstatement and damages under the District of Columbia Human Rights Act, D.C. §§ 1–2501 to –2557 (1981 & Supp. 1984), alleging discrimination on the basis of physical handicap. She appeals the grant of summary judgment for appellees, claiming that the trial court incorrectly assigned to her the burden of persuasion on the question whether the employer could accommodate her handicap. Contrary to appellant's argument, we agree with the trial court's finding that appellant did not proffer an ability and willingness "to work at all." Thus, the question of accommodating her handicap was irrelevant. In the words of the trial court, the "statute does not make it discrimination to terminate someone who can't work at all." Accordingly, we affirm.[1]

### I.

Appellant worked for ACCD from November 1977 until December 31, 1980. The circumstances of her departure are in dispute. Appellant's complaint alleges, in effect, that she was on disability leave until September 1981, when she was unlawfully fired because of her physical handicap. She seeks injunctive relief against ACCD's allegedly discriminatory employment practices, as well as reinstatement to her former job "with full benefits," compensatory damages,[2] costs, and attorney's fees.

Appellees deny any discrimination and assert that appellant voluntarily resigned as of the day she left work, December 31, 1980.

Both sides are hampered, to some extent, by a failure to document their version of the reasons for appellant's departure and

---

1. After the briefing of this appeal, appellees filed a motion to strike portions of appellant's brief. The motions division of this court deferred to the merits division. We agree that a portion of appellant's brief to which the motion refers is unsupported by the record. Therefore, as elaborated in Part II, *infra*, we grant the motion to strike in part. The clerk is directed to note the stricken parts of the brief in this court's record.

2. The record does not make clear whether appellant claims damages for reimbursement of health insurance premiums and/or benefits, or disability insurance premiums and/or benefits, or both. Because we affirm summary judgment for the employer, we need not sort out appellant's claim.

failure to return to work.[3] Nonetheless, there is uncontested evidence of record which supports the trial court's ruling that appellant was not the victim of discrimination, whether she was terminated or on disability leave, because her requested accommodation was "not to work at all."

Appellee Reese Robrahn stated in his affidavit that, upon assuming his duties as the new ACCD Executive Director in mid-December 1980, he interviewed appellant, and "she informed me that she could no longer work ....." In their answers to interrogatories, appellees expanded on the circumstances of appellant's departure:

> Plaintiff quit because she did not want to perform the duties the new Executive Director, Reese Robrahn, requires, including reading for him (because he is blind), typing and answering the telephone. Mr. Robrahn then offered her any other job she wished to do at ACCD, for which she was qualified. She found none to her liking and told him she preferred to "go on disability."

Of critical significance, appellant can point to nothing in the record where she disputes this version of her leaving ACCD or proffers her willingness and ability to return to work. Indeed, her behavior confirms that she either affirmatively resigned or remained too disabled to continue employment under any circumstances.

According to undisputed, verified documents of record, ACCD gave appellant, and she accepted, two weeks' severance pay upon her departure. Throughout the first part of 1981, appellant frequently contact-ed ACCD by telephone about her insurance benefits; at no time did she indicate a desire to return to work. ACCD eventually warned appellant that it was about to discontinue her health insurance coverage. Then, on September 3, 1981, appellee Robrahn wrote appellant, stating that ACCD would no longer pay the premiums on her insurance after September 30.[4] Eventually in order to support her insurance claim for total disability, appellant signed, in January 1982, a document which gave, as her reason for leaving work, "voluntary termination because of disability" with date of return "not known."

After submission of all the pleadings, interrogatories, motion for summary judgment and opposition, and supporting affidavits, followed by oral argument, Judge Wolf granted appellees' motion for summary judgment. The court stated:

> The—accommodation that the plaintiff claims and requested was—not to work at all and—the statute is not intended to make an insurer out of any employer.... [T]he statute does not make it discrimination to terminate someone who can't work at all, and that's what we had here.

In connection with asking this court to sustain summary judgment, appellees have moved to strike certain portions of appellant's brief. Because of its threshold relevance to the merits, we first consider the motion to strike.

## II.

■ Appellees object to several assertions in appellant's brief that allegedly are

---

**3.** Under ACCD's internal policy, an employee's resignation or dismissal must be accompanied by "explanatory material ... provided [to] the employer or employee in writing, together with documentation as applicable." Personnel Policies Manual [PPM] ¶ 1.8. Also under this policy, an employee should notify the Director if she requires sick leave and should obtain "prior approval of the Director" if she requires "[o]ther leave" (including, presumably, long-term disability). PPM ¶¶ 3.2, 3.5. Thus, whether appellant's departure was a termination upon voluntary resignation, as appellees claim, or an indefinite disability leave, as appellant claims, ACCD's rules require written documentation.

Nonetheless, in light of appellant's failure to proffer a prima facie case of discrimination, Part III, *infra,* the lack of such documentation by either party is not dispositive.

**4.** Appellant claims that the continued insurance coverage for nine months after her departure demonstrates that ACCD still regarded her as an employee. Appellees counter that this coverage was at first a matter of "inadvertence" and then, after it was discovered, a matter of "grace" until appellant had an opportunity to obtain her own insurance policy without a gap in coverage.

unsupported by record evidence. One of these objections has merit. With respect to appellant's physical condition after December 30, 1980, her brief asserts:

> As a result of her condition, Ms. Miller suffers from periodic episodes of severe pain in her back and leg which generally result in surgical removal of the disc and fusion of the spine. Following surgical treatment, an extended period of recovery is generally indicated. During recovery, it is possible for one to undertake a limited work schedule which could be supplemented by performing work at home. Given Ms. Miller's condition, there is no question that she falls within the definition and intent of the Act regarding physically handicapped individuals.
>
> \* \* \* \* \* \*
>
> Past conduct between Ms. Miller and ACCD indicate[s] that her handicap was something which was capable of being overcome and the type of handicap for which accommodation could be made.

These statements are unsupported by the record. Indeed, to the extent that they imply appellant's ability and willingness to work after her departure in December 1980, they seriously distort the record on the central issue. On January 6, 1981, appellant's physician signed a statement that she was "unable to work from 1/1/81 for an indefinite time period." Over a year later, on February 26, 1982, Miller's physician identified her as "totally disabled" for "any occupation." There is no record evidence of appellant's ability to work at all during the 14 months between these two

statements.[5] Appellant's failure to allege and proffer of record her ability and willingness to work is at the heart of trial court's grant of summary judgment. Accordingly, we grant appellees' motion to the extent of striking the above-quoted portions of appellant's brief. *See* D.C.App.R. 27. We now proceed to the merits.

### III.

D.C. Code § 1–2512(a)(1) (1981)[6] prohibits employment discrimination against persons in certain protected classes, including those with a "physical handicap," *i.e.*, "a bodily or mental disablement which may be the result of injury, illness or congenital condition for which reasonable accommodation can be made." *Id.;* § 1–2502(23) (1981). In deciding cases under this provision, we have adopted the Supreme Court's approach in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the seminal case establishing the burden of proof in employment discrimination cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1982). *See, e.g., RAP, Inc. v. District of Columbia Commission on Human Rights*, 485 A.2d 173 (D.C.1984) (sex discrimination); *Greater Washington Business Center v. District of Columbia Commission on Human Rights*, 454 A.2d 1333, 1338 (D.C.1982) (sex discrimination); *Newsweek Magazine v. District of Columbia Commission on Human Rights*, 376 A.2d 777, 789 (D.C.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 729, 54 L.Ed.2d 758 (1978) (racial discrimination).

---

5. Appellant counsel's statement at oral argument on the summary judgment motion that "[t]here have been time periods when [Miller] has been ... capable of returning to work" does not constitute evidence of record.

6. D.C. Code § 1–2512(a)(1) provides in part:
   (a) *General.*—It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, physical handicap, matric-

ulation, or political affiliation, of any individual:
   (1) To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee;

*McDonnell Douglas Corp.* set forth "the order and allocation of proof in a private, non-class action challenging employment discrimination" of all sorts. 411 U.S. at 800, 93 S.Ct. at 1823. The Supreme Court stated that the employee, first, "must carry the initial burden of establishing a prima facie case of ... discrimination"; second, if the plaintiff does so, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection"; third, if the employer succeeds, the burden shifts back to the employee to show that the employer's stated reason "was in fact pretext." 411 U.S. at 802, 804, 93 S.Ct. at 1824, 1825.

While it is clear that the employee must carry the initial burden of establishing a prima facie case of discrimination, the nature of the burden depends on the kind of discrimination alleged. Because of the particular nature of discrimination against the handicapped, we turn to cases under the analogous federal statute for guidance as to what constitutes a prima facie case.

■ In *Prewitt v. United States Postal Service*, 662 F.2d 292 (5th Cir.1981), the plaintiff-appellant, a physically disabled veteran, brought suit under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a (1982), challenging the postal service's failure to rehire him for a position he had satisfactorily performed at a time when he had the same handicap. Prewitt claimed he was a victim of "surmountable

barrier" discrimination; *i.e.*, "he was rejected even though he could have performed the essentials of the job if afforded reasonable accommodation." *Id.* at 304–305.[7] The court stated that, in order to make a prima facie case, Prewitt needed to demonstrate that:

> (a) except for his physical handicap, he is qualified to fill the position; (b) he has a handicap that prevents him from meeting the physical criteria for employment; and (c) the challenged physical standards have a disproportionate impact on persons having the same handicap from which he suffers. To sustain this prima facie case, there should also be a facial showing or at least plausible reasons to believe that the handicap can be accommodated or that the physical criteria are not "job-related."

*Id.* at 309–10. Accordingly, such a showing would require, at a minimum, that an employee present herself to the employer as someone willing and able to work, but for a surmountable handicap. This showing must precede any shift of burden to the employer to demonstrate that there can be no reasonable accommodation for the employee's handicap and thus that the failure to employ is nondiscriminatory.[8]

■ From the record here, it is clear that appellant has failed to make a prima facie case of discrimination. Although appellant is disabled, she does not satisfy the definitional requirement under the Human

7. This is one of four types of discrimination against handicapped persons that commentators have identified. 662 F.2d at 305 n.19. Appellant clearly alleges "surmountable barrier" discrimination, since she argues on appeal that ACCD failed to provide "reasonable accommodation."

8. EEOC regulations under the Rehabilitation Act of 1973, 29 C.F.R. § 1613.704 (1984), provide: "(a) An agency shall make reasonable accommodation to the known physical or mental limitations of a qualified handicapped applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program." In *Prewitt*, the court held that, once the plaintiff establishes a prima facie case of discrimination, this regulation shifts the burden of persuasion

to the employer to establish an inability to accommodate the handicapped applicant. *Contra, Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (under Title VII of the Civil Rights Act of 1964, as interpreted in *McDonnell Douglas Corp.*, employer has burden of production, not persuasion, at second stage of discrimination inquiry). Because we conclude that appellant has failed to establish a prima facie case of discrimination for reasons unrelated to the nature of her handicap, we need not decide whether, under the D.C. Human Rights Act, the burden of persuasion, or only the burden of production, eventually shifts to the employer to establish that no "reasonable accommodation can be made." D.C. Code § 1–2502(23).

Rights Act that her handicap be a condition for which "reasonable accommodation can be made." D.C. Code § 1–2502(23). By presenting herself as someone who was either unable or unwilling to work at all, appellant could never be "qualified to fill the position" under any circumstances; thus ACCD had no obligation to continue her employment. *Prewitt*, 662 F.2d at 309, 310.[9]

More specifically, appellees state in their answers to interrogatories that appellant "did not want to perform the duties" her job with the new Executive Director would entail, nor the duties of "any other job ... at ACCD, for which she was qualified." Furthermore, at oral argument on the summary judgment motion, appellant admitted that "there was no accommodation requested" at the time of her departure or thereafter. Immediately after leaving ACCD, moreover, she accepted severance pay and submitted the statement of her physician that she was "unable to work ... for an indefinite time period." More than a year later, she submitted with her disability claim a physician's statement that she was "totally disabled." Appellant was in frequent contact with ACCD by phone, but these calls were about her insurance benefits, not about the possibility of doing any work. Nor does appellant's affidavit in support of opposition to summary judg-

ment, dated June 13, 1983, aver her ability and willingness to work.[10]

■ In summary, appellant has failed to carry her burden of pleading and proffer. When one party files a motion for summary judgment, the court will grant the motion unless the moving party's factual allegations are countered with specificity. Super.Ct.Civ.R. 56(e). Appellant never disputed appellees' allegation that she had shown, and continued to show, a disinclination or inability to work at all once she left ACCD on December 31, 1980. Her counsel's eleventh-hour assertion at oral argument on the summary judgment motion— unsupported by the record—that "[t]here have been time periods when she has been ... capable of returning to work" does not suffice to counter appellees' statements under oath. If appellant had been able and willing to work and had said so upon her departure from ACCD or thereafter, she should have proffered such evidence under oath in response to appellees' motion for summary judgment. *See* Super.Ct.Civ.R. 56(e). "Appellant may not hold back any evidence or fail to make full disclosure of the facts upon which [s]he relied for recovery. Disclosure under summary judgment must be full and complete." *Yates v. District Clothing*, 241 A.2d 596, 599 (D.C. 1969). Accordingly, whether appellant voluntarily quit ACCD, as appellees allege, or merely remained too disabled to work at

9. Appellant relies on *Crane v. Lewis*, 551 F.Supp. 27, 31 (D.D.C.1982) for the proposition that the burden is on the employer, not on the employee, to suggest reasonable accommodations for an alleged physical handicap. *Crane* is inapposite. Although the plaintiff had not "come forward and indicated a willingness to obtain and use certain compensatory devices," *id.* at 31, he at least had applied for the position of Information Specialist, providing information about his handicap, a hearing disorder. Accordingly, he presented a prima facie case that he was willing to work, capable of doing so, and seeking an accommodation.

In contrast, appellant is like the appellant in *Guerriero v. Schultz*, 557 F.Supp. 511 (D.D.C. 1983), who alleged that the Foreign Service discriminated against him on the basis of his admitted alcohol condition and mental disorders. These, however, made him unfit for assignment

abroad, which is an essential condition of employment in the Foreign Service. *Id.* at 514. By definition, therefore, Guerriero could not be "qualified" for this job so long as his handicap persisted. *Id.* The court held that appellant had not made a prima facie case of discrimination. *Id. See RAP, Inc.*, at 177 (alternative ground for decision is plaintiff's failure to establish prima facie case, where disparity of treatment attributable to her conduct, not to her sex).

10. Appellant's counsel stated at oral argument that, because appellant was terminated in September 1981, she had no duty to give notice of her willingness to work thereafter. However, given that appellant seeks reinstatement but evidenced no willingness or ability to work after December 31, 1980, this argument is irrelevant.

all, the legal result is the same. Appellees have not discriminated against her on the basis of physical handicap within the meaning of D.C. Code § 1–2512(a)(1).

*Affirmed.*