BENEFITS COMMUNICATION
CORPORATION, et al.,
Appellants,

v.

Laurette C. KLIEFORTH, Appellee.

No. 92–CV–996.

District of Columbia Court of Appeals.

Argued Jan. 4, 1994.

Decided June 9, 1994.

C. William Groscup, with whom Steven G. Barringer, Washington, DC, John M. Husband, and Brian M. Mumaugh, Denver, CO, were on the brief, for appellants.

Robert B. Fitzpatrick, with whom Mark D. Laponsky and Jonathan R. Topazian, Washington, DC, were on the brief, for appellee.

Before FERREN,* Acting Chief Judge, and STEADMAN and KING, Associate Judges.

KING, Associate Judge:

Appellee Laurette C. Klieforth ("employee") filed a complaint against appellants Great West Life Assurance Co. ("Great

---

* Former Chief Judge ROGERS was a member of the division that heard oral argument in this case. After her departure from the court, Acting

West") and its subsidiary Benefits Communication Corporation ("BCC"), who was her employer, alleging appellants had denied her a promotion on the basis of her sex in violation of the District of Columbia Human Rights Act ("Human Rights Act").[1] Shortly after the Supreme Court's decision in *Gilmer v. Interstate/Johnson Lane Corp.*,[2] which upheld an arbitration provision for an age discrimination claim, appellants moved to compel arbitration of Klieforth's discrimination claim. After extensive briefing and argument, Judge Mitchell denied the motion, concluding the Civil Rights Act of 1991 ("the 1991 amendments")[3] retroactively overruled the Supreme Court's *Gilmer* decision. Concluding that the trial court erred in so doing, we reverse and remand for further proceedings.

## I.

On October 30, 1985, the employee executed a "Uniform Application for Securities Industry Registration or Transfer" ("Form U–4")[4] in contemplation of beginning employment with BCC as a securities dealer.[5] On January 2, 1986, the employee was hired by

BCC as an account executive, an office support position. After passing an examination that qualified her to sell securities, Klieforth was promoted to the position of "Employer Sponsored Specialist" selling retirement related registered insurance products and securities. Some time thereafter, although the record is not clear on this point, the position of vice president of sales of the Washington, D.C. office became available and the employee, having already assumed many of the duties of that position, became a candidate for that post and expected to be promoted to it. Her expectations were not realized, and the vice president of sales for the Detroit office, a male, was actually appointed.

On October 10, 1990, the employee filed a complaint in the Superior Court alleging she was denied the promotion because of her sex in violation of the Human Rights Act. On June 24, 1991, just six weeks after *Gilmer* was decided, appellants filed a motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"),[6] the District of Columbia Uniform Arbitration Act,[7] and section 8(a) of the National Association of Securities Dealers ("NASD") Code of Arbitration Procedures.[8] The employee opposed, contend-

---

Chief Judge FERREN was selected by lot to replace her.

1. D.C.Code §§ 1–2501 to –2557 (1992 & 1993 Supp.).

2. 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

3. Pub.L. No. 102–166, 105 Stat. 1071 (effective November 21, 1991) (codified in various sections throughout 42 U.S.C.).

4. Form U–4 contains the following statement:

 [The declarant] agree[s] to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in item 10 as may be amended from time to time.

5. The Form U–4 listed BenefitsCorp Equities ("BCE"), also a subsidiary of Great West, as the employee's registered brokerage firm since she was required to purchase securities through BCE. On February 1, 1991, the employee's reg-

istration was transferred to Great West. On February 12, 1991, four months after the employee filed her complaint in the Superior Court, she executed a second Form U–4, listing Great West as the brokerage firm through which she was registering.

6. 9 U.S.C. §§ 1–16 (1988 & Supp. IV).

7. D.C.Code §§ 16–4301 to –4319 (1989).

8. Section 8(a) provides:

 Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:
 (1) a member against another member;
 (2) *a member against a person associated with a member* or a person associated with a member against a member; and,
 (3) a person associated with a member against a person associated with a member.
 (Emphasis added). Section 1 of the Code (contained in Part I) provides:

ing: (1) sections 1 and 8(a) of the NASD code only provide for the arbitration of disputes relating to the business activities of NASD members; (2) the NASD code does not address employment discrimination claims; (3) appellants waived any right to arbitration by participating in the law suit; and (4) sex discrimination claims under the Human Rights Act are not subject to mandatory arbitration.[9]

On July 10, 1992, Judge Mitchell, ruling from the bench, denied the motion to compel submission to arbitration. Judge Mitchell concluded:

> We ... have examined the legislative history surrounding the Civil Rights Act of 1991, and ... that legislative history clearly says that ... they encourage alternative methods of resolving disputes, but they do not mean to supplant those rights as found under Title VII.
>
> ... So we conclude ... that the legislative history [of the 1991 amendments] did not support [Gilmer].... [S]ubsequent legislative history does seem to support the proposition that a—plaintiff does not give up this Seventh Amendment right without it being more specifically determined during the dispute itself.

In other words, they may give it up after they enter into negotiations and decide that we will submit this matter to arbitra-

tion, and the Court encourages that. And the legislative history encourages it.

> But ... the [Gilmer court] ... indicated that the—if it had legislative history [of the Age Discrimination in Employment Act] which indicated something separate from ... the conclusion reached in [Gilmer], that it would more or less follow that legislative history.... The Congress seemed to have taken extra and unusual steps to make it clear that they did not intend ... the 1991 Civil Rights Act to be ... governed by the principle purportedly espoused in the [Gilmer] case.

We read this passage as a ruling by the trial judge that the 1991 amendments overrule the holding of Gilmer. The trial judge did not, however, reach any of the other grounds raised by the employee in opposition to the motion to compel arbitration. This appeal followed.[10]

### II.

In this case the employee's claim is based on an alleged violation of the Human Rights Act. In interpreting that act we have generally looked to cases from the federal courts involving claims brought under the Civil Rights Act of 1964 for guidance and have adopted those precedents when appropriate. See, e.g., Atlantic Richfield Co. v. District of Columbia Comm'n on Human

---

This Code of Arbitration Procedure is prescribed and adopted ... for any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company:
 (1) between or among members;
 (2) *between* or among *members and* public customers, or *others;* and,
 (3) between or among members, registered clearing agencies with which the [NASD] has entered into an agreement to' utilize the [NASD's] arbitration facilities and procedures, and participants, pledges, or other persons using the facilities of a registered clearing agency, as these terms are defined under the rules of such a registered clearing agency.
(Emphasis added). Appellants contended arbitration of this dispute was covered by the portions of the code italicized above.

9. In addition, after a hearing on that motion, the parties submitted written arguments on the issue of whether the Seventh Amendment bars arbitration of the employee's sex discrimination claim. On appeal, the employee has renewed all the arguments made to the trial court and has raised two others. Specifically, she contends: (1) there was no meeting of the minds between the parties to arbitrate non-securities disputes, and (2) the agreement to arbitrate is unenforceable as an adhesion contract. We decide only that the 1991 amendments do not overrule the holding of Gilmer.

10. This court has jurisdiction to review an order denying a motion to compel arbitration. *See* D.C.Code § 16–4317(a)(1) (1989) (order denying an application to compel arbitration is final for purposes of appeal).

*Rights,* 515 A.2d 1095, 1102–03 (D.C.1986) (holding that Office of Human Rights' failure to timely amend complaint to include constructive discharge claim does not bar Human Rights Commission from ruling on claim is in accord with federal rule on the issue); *RAP, Inc., v. District of Columbia Comm'n on Human Rights,* 485 A.2d 173, 176–77 (D.C.1984) (following apportionment of burdens and orders of proof prescribed for sex discrimination claims under Title VII); *Howard Univ. v. Best,* 484 A.2d 958, 978 (D.C. 1984) (following federal precedent in holding that faculty member presented *prima facie* case of sex discrimination) (citations omitted). We have also followed, when applicable, precedent from the federal courts involving claims under other civil rights statutes. *See, e.g., Miller v. American Coalition of Citizens with Disabilities, Inc.,* 485 A.2d 186, 190–91 (D.C.1984) (relying on federal precedent interpreting Rehabilitation Act of 1973 in holding that physically handicapped woman failed to make *prima facie* case of employment discrimination under District's Human Rights Act) (citation omitted).

11. 29 U.S.C. §§ 621–34 (1988 & Supp. IV).

12. In *Gilmer,* the employee was registered with the New York Stock Exchange and had executed a Form U–4. 500 U.S. at 23, 111 S.Ct. at 1650. After the employee was discharged, he filed a claim with the Equal Employment Opportunity Commission and later brought an action in federal district court. *Id.* at 23–24, 111 S.Ct. at 1650–51. The employer moved to compel arbitration, and the district court denied the motion. *Id.* at 24, 111 S.Ct. at 1651. The United States Court of Appeals for the Fourth Circuit reversed. The Supreme Court, in turn, affirmed the circuit court, holding that agreements to arbitrate statutory claims of employment discrimination under the ADEA are enforceable under the FAA. *Id.* at 27–29, 111 S.Ct. at 1652–54.

The Form U–4 signed by the employee in this case is identical to the one signed by the employee in *Gilmer.* Both have provisions referring to the code of arbitration procedures of the applicable stock exchange. In *Gilmer,* the applicable code was the code for the New York Stock Exchange ("NYSE") that unambiguously, as counsel for Klieforth has conceded, applies to employment disputes of the nature presented here. The applicable exchange in this case, however, is the NASD and its code is not as clear on this point as is the NYSE's code. *See supra* note 8. As we observed in the text, *supra* pp. 1300–1301, the employee contended in the trial court that the NASD code provisions do not apply to this em-

In *Gilmer,* the Supreme Court, applying the FAA, held that an employment discrimination claim filed pursuant to the Age Discrimination in Employment Act ("ADEA") [11] was subject to a compulsory arbitration agreement contained in a securities registration application executed by an employee.[12] *Gilmer, supra,* 500 U.S. at 27, 111 S.Ct. at 1652. With a single exception (later reversed), every federal circuit court of appeals addressing the issue has extended the *Gilmer* holding to employment discrimination claims brought under Title VII.[13] *See, e.g., Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 700 (11th Cir.1992); *Mago v. Shearson Lehman Hutton, Inc.,* 956 F.2d 932, 935 (9th Cir.1992); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 307 (6th Cir.1991). Thus, the uniform and overwhelming federal court precedent holds that compulsory arbitration agreements are binding for employment discrimination claims such as those presented in this case.

 The employee contends that since the Council of the District of Columbia ("Coun-

ployment dispute. The trial court did not resolve that issue and we do not consider it. On remand, the trial court will need to resolve that point, as well as the other arguments raised by the employee, *see supra* text at pp. 1300–1301 and note 9, before it can decide whether the motion to compel arbitration should or should not be granted. We, of course, express no view on these issues. If after considering these issues the trial court again denies the motion to compel arbitration, BCC may note an appeal from that denial. *See supra* note 10.

13. The only exception is *Alford v. Dean Witter Reynolds, Inc.,* 905 F.2d 104 (5th Cir.1990), a case decided before *Gilmer,* where the United States Court of Appeals for the Fifth Circuit upheld the district court's denial of a motion to compel arbitration under the FAA. The Supreme Court, however, vacated and remanded the case for further consideration in light of *Gilmer* after that case was decided. *Dean Witter Reynolds, Inc. v. Alford,* 500 U.S. 930, 111 S.Ct. 2050, 114 L.Ed.2d 456 (1991). On remand, the Fifth Circuit held that *Gilmer* required it to reverse the district court and compel arbitration of Alford's Title VII claim. *Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229, 229–30 (5th Cir. 1991). Thus, every federal circuit court that has considered the issue since *Gilmer* was decided has reached the same result.

cil"), in drafting the Human Rights Act, recognized the importance of a jury trial in actions brought pursuant to that statute, she would be deprived of this important right if we follow *Gilmer*, and hold that the arbitration provision can be enforced by the employer.[14] However, as with the ADEA and Title VII of the Civil Rights Act of 1964, there is no provision in the District's Human Rights Act precluding an employer and employee from voluntarily agreeing to arbitrate employment discrimination claims. Given this silence, *Gilmer*, and the Title VII cases following *Gilmer*, holds that employment discrimination claims can be subject to arbitration if the employer and employee have agreed to arbitrate disputes of that nature. Moreover, other District legislation endorses arbitration as an acceptable dispute resolution alternative.[15]

■ The employee also objects to the adequacy of arbitration procedures with respect to disputes arising under the Human Rights Act. We agree with the *Gilmer* Court's ob-

servation that "[s]uch generalized attacks on arbitration rest on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants." *Gilmer*, *supra*, 500 U.S. at 30, 111 S.Ct. at 1654 (citation, internal quotation, and alteration omitted). Time and again this court has observed that there is a well-established preference to arbitrate disputes when the parties have so agreed. *See generally Carter v. Cathedral Ave. Coop., Inc.*, 566 A.2d 716, 719 n. 9 (D.C.1989); *Poire v. Kaplan*, 491 A.2d 529, 534 n. 8 (D.C.1985); *Sindler v. Batleman*, 416 A.2d 238, 343 (D.C. 1980). Thus, arbitration has been recognized as a highly desirable and sound alternative to litigation.

Finally, although the Human Rights Act cases cited in the text, *supra* pp. 1301–1302, mainly address procedural issues, we see no reason for departing from our practice of considering applicable federal court precedent as persuasive authority when interpreting a local provision that is substantially

---

14. The employee relies on D.C.Code § 1–2556(a), which provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint [with the Office of Human Rights]." While there was no similar provision in Title VII at the time *Gilmer* was decided, the ADEA provided:

(1) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: *Provided*, That the right of any person to bring such action shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter.

(2) In an action brought under paragraph (1), a person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action.

29 U.S.C. § 626(c). Notwithstanding this provision, the *Gilmer* Court held that the ADEA "did not explicitly preclude arbitration or other nonjudicial resolution of claims.... If Congress intended the substantive protection afforded by the

ADEA to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history." *Gilmer*, *supra*, 500 U.S. at 29, 111 S.Ct. at 1653 (citation, internal quotation, and alterations omitted). The Court held that no such intention was discernible; in fact, it concluded that the opposite was true, observing, for example, that 29 U.S.C. § 626(b), which directs the Equal Opportunity Employment Commission to pursue informal methods of dispute resolution, "suggests that out-of-court dispute resolution, such as arbitration, is consistent with the statutory scheme established by Congress." *Id.*

15. For example, the District's Arbitration Act provides that "a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." D.C.Code § 16–4301. *See also Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) ("any doubts concerning the scope of arbitrable issue should be resolved in favor of arbitration"); *Haynes v. Kuder*, 591 A.2d 1286, 1289 (D.C.1991) (arbitration clause will be enforced if it is "susceptible of an interpretation" that covers the dispute) (citations omitted).

patterned on a federal statute.[16] When interpreting other local statutes, we ordinarily "look to the interpretation of the federal statute for guidance in determining the construction of our own statute since it was based on the federal provision," *Corley v. United States,* 416 A.2d 713, 714 (D.C.1980), and we have continued that practice with respect to previous cases arising under the Human Rights Act. *See supra* p. 6; *see generally* 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 52.02 (5th ed. 1992). For the reasons stated, therefore, we conclude that the principle set forth in *Gilmer* should apply to employment discrimination disputes under the ·Human Rights Act, and we thus hold that agreements to arbitrate employment discrimination claims are enforceable.

### III.

■ Having concluded that the principle set forth in *Gilmer* applies to employment disputes such as this one does not end our inquiry. We must now consider what effect, if any, the 1991 amendments have on the principle set forth in *Gilmer.* The trial judge held that the 1991 amendments retro-

actively overruled *Gilmer.*[17] We have no need to decide the retroactivity issue, however, because we conclude that the trial court erred in ruling that the 1991 amendments modified the holding reached in *Gilmer* and the Title VII cases that follow it.[18]

We start our analysis with an examination of the language of the statute itself. The only provision in the 1991 amendments that even remotely applies to the issue presented here is section 118: "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes under the Acts or provisions of Federal law amended by this title." Pub.L. No. 102–166, 105 Stat. 1071, 1081, Title I, § 118. We find nothing in that provision which can be construed as modifying or undermining the holding of *Gilmer.* Indeed, if anything, the opposite is true; *i.e.,* arbitration is an alternative to litigation expressly encouraged by the statute. *See Hirras v. National R.R. Passenger Corp.,* 10 F.3d 1142, 1146 (5th Cir.1994) ("§ 118 of the 1991 Civil Rights Act encourages the use of 'alternative means of dispute resolution,' including

---

**16.** It is clear from the legislative history of the Human Rights Act that the Council looked to the federal civil rights acts, as well as applicable federal court opinions interpreting those statutes. *See, e.g.,* REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA COMMITTEE ON ECONOMIC DEVELOPMENT, LABOR, AND MANPOWER, THE PROCEEDINGS REGARDING TITLE 34, THE HUMAN RIGHTS LAW, at 2 (August 7, 1973); REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA COMMITTEE ON EDUCATION AND YOUTH AFFAIRS, THE PROCEEDINGS REGARDING TITLE 34, THE HUMAN RIGHTS LAW, at 1, 3–4 (October 15, 1973). We could find no indication in the legislative history that the Council intended that compulsory arbitration agreements in employment contracts would not be enforceable. Any such indication would, of course, require a result different from the one we have reached here since our role is to determine the intent of the Council when it enacted the Human Rights Act. In doing so, we look to federal court interpretations of similar federal statutes; however, we are in no way bound by the federal precedent if we determine that the Council intended a different result.

**17.** On April 26, 1994, the Supreme Court held that sections 101 and 102 of the 1991 amendments do not apply retroactively. *See Rivers v. Roadway Express, Inc.,* — U.S. —, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) (section 101);

*Landgraf v. USI Film Prods.,* — U.S. —, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (section 102). Because the Court confined its holdings with respect to those particular sections (which address the prohibition against racial discrimination in the making and enforcement of contracts, and the right of recovery and damages in intentional discrimination cases) it is an open question whether or not the remaining provisions of the 1991 amendments, including section 118 which appellant contends overruled *Gilmer,* are retroactive.

**18.** The 1991 amendments, however, specifically modified the holding of other Supreme Court decisions. For example, Congress designed the 1991 amendments, *inter alia,* "to codify the concepts of 'business necessity' and 'job related' enunciated by the Supreme Court in *Griggs v. Duke Power Co.,* 401 U.S. 424 [91 S.Ct. 849, 28 L.Ed.2d 158] (1971), and in other Supreme Court decisions prior to *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642 [109 S.Ct. 2115, 104 L.Ed.2d 733] (1989)," finding the *Wards Cove* decision had "weakened the scope and effectiveness of Federal civil rights protections." Pub.L. No. 102–166, 105 Stat. 1071, 1071, §§ 2, 3.

arbitration, to resolve disputes arising under Title VII") (quoting 42 U.S.C.A. § 2000e note (West Supp.1993)).

The employee contends, nonetheless, that the legislative history of the 1991 amendments supports her contention that *Gilmer* does not apply to employment discrimination claims. She relies on an isolated remark[19] by the chairman of the House Committee on Education and Labor during the floor debate,[20] and on a discussion of alternative means of dispute resolution, contained in the first House report on the 1991 amendments.[21] Assuming that, in this instance, examination of legislative history is necessary to determine Congress' intent, we note that "[i]t is only the statute itself that is law. A statement by a single member of the legislature or a report by a single committee (or even by an entire house) is not." *Gersman v. Group Health Ass'n,* 298 U.S.App.D.C. 23, 28, 975 F.2d 886, 891 (1992). *See also* 2A SUTHERLAND STATUTORY CONSTRUCTION § 48.- 13. Here, however, we find no need to consider the legislative history since the language of the statute in no way suggests that the rule of *Gilmer* should no longer apply. *See Butler v. Butler,* 496 A.2d 621, 622 (D.C. 1985) ("Where a statute is clear on its face, there is no need to engage in an analysis of legislative intent.") (citations omitted). We conclude, therefore, that the employee's reliance on legislative history is misplaced. Thus, we hold that the trial judge erred as a matter of law in ruling that the 1991 amendments overruled *Gilmer.*

We do not reach the other arguments raised by the employee since they were either not presented to the trial court or were presented but not decided.[22] *See Ealey v. Ealey,* 596 A.2d 43, 46 (D.C.1991) ("A trial judge must make findings of fact and conclusions of law with respect to every issue that is raised; otherwise meaningful appellate review cannot occur and this court must remand....") (citations omitted). Accordingly, we reverse and remand to the trial court for further proceedings consistent with this opinion.

*Reversed and remanded.*

FERREN, Acting Chief Judge, concurring:

I join in the opinion for the court because I can discern no basis in the Human Rights Act or in its legislative history for concluding that the Council of the District of Columbia intended to bar voluntary agreements to arbitrate employment discrimination claims. I am concerned, however, that such agreements could, in some circumstances, amount to contracts of adhesion forced on employees, with the result that enforcement of the arbitration provision would be unconscionable. In such circumstances, the employee may well have a basis for asking the court to void the arbitration clause and to permit a jury trial on the discrimination claim. Nothing we say today precludes that possibility.

---

**19.** The employee relies on the following remark:

[T]he [House Committee on Education and Labor] believes that any agreement to submit dispute issues to arbitration, whether in the context of a collective bargaining agreement or in an employment contract, does not preclude the affected person from seeking relief under the enforcement provisions of Title VII.

137 CONG.REC. H9530 (Nov. 7, 1991) (statement of Rep. Edwards).

**20.** During the same debate, however, another member explicitly endorsed the use of alternative means of dispute resolution in lieu of litigation and cited *Gilmer. See* 137 CONG.REC. H9548 (Nov. 7, 1991) (statement of Rep. Hyde).

**21.** The passage in the report provides:

The Committee emphasizes, however, that the use of alternative dispute resolution mechanisms is intended to supplement, not supplant, the remedies provided by Title VII. Thus, for example, the Committee believes that *any agreement to submit disputed issues to* arbitration, whether in the context of a collective bargaining agreement or in any employment contract, does not preclude the affected person from seeking relief under the enforcement provisions of Title VII.... The Committee does not intend this section to be used to preclude rights and remedies that would otherwise by available.

H.R.REP. No. 102–40(I), 102d Cong., 1st Sess., 97 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 635.

**22.** *See* text at pp. 1300–1301 and notes 9 and 12.