**Sondra W. HYMAN, et al., Plaintiffs,**

**v.**

**FIRST UNION CORP., et al., Defendants.**

**No. CIV.A. 94–1043(RCL).**

United States District Court,
District of Columbia.

Oct. 9, 1997.

Paul C. Sprenger, Sprenger & Lang, P.L.L.P., Minneapolis, MN, Jane Lang, Timothy B. Flemming, Michael D. Lieder, Sprenger & Lang, DC, P.L.L.C., Washington, DC, for Plaintiffs.

Francis C. Clark, Charlotte, NC, J. Thomas Kilpatrick, Christine M. MacIver, Atlanta, GA, for Defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

### I. Background

This matter comes before the court on defendants' various motions for summary judgment on the discrimination claims of plaintiffs Hymavathi Nair, Donna L. Diewald, and Luther Dorsey. Plaintiffs are members of a group of employees and applicants permitted to proceed collectively against defendants [1] by this court pursuant to a memorandum opinion, 982 F.Supp. 1 issued August 12, 1997 ("*Hyman I*"). The factual and procedural background of this case is set out fully in the court's September 26, 1997 memorandum opinion, 980 F.Supp. 38 ("*Hyman IV*"), granting First Union's motion to dismiss plaintiffs' disparate impact claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. First Union's motions for summary judgment presently before the court address individual plaintiffs' claims of discrimination brought under the ADEA, the District of Columbia Human Rights Act of 1977 ("DCHRA"), D.C.Code § 1–2501 et seq., and in the case of one plaintiff, Hymavathi Nair, a claim under 42 U.S.C. § 1981. Upon consideration of the written submissions of parties and the relevant law, the court will deny First Union's motions for summary judgment on these plaintiffs' ADEA and DCHRA claims and grant First Union's motion for summary judgment on the Section 1981 claim of Hymavathi Nair.

### II. Discussion

#### A. Summary Judgment

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In this regard, "[m]ateriality is . . . a function of the applicable legal standard." *Kowalczyk v. Department of Justice*, 73 F.3d 386, 389 (D.C.Cir.1996). Inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). If summary judgment is to be denied, there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment may be granted. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

---

1. Plaintiffs have named First Union Corp., First Union National Bank of Virginia, First Union National Bank of Maryland, First Union National Bank of Washington, D.C., and First American Metro Corp. as defendants. The court will refer to defendants collectively as First Union.

B. Plaintiffs' Claims of Discrimination Brought Under the ADEA and the DCHRA[2]

1. The Joint Scheduling Order

■ On August 12, 1996, this court entered a Joint Scheduling Order providing guidelines for the parties with respect to both discovery and dispositive motions. Paragraph 4 of this Order provides:

4. *Discovery.* Until the trial or trials of common issues, discovery will be limited to determination of common issues. The Court contemplates individualized discovery, if necessary, following the completion of the discovery on common issues and the trial[ ] or trials on those issues. Nothing in this Order shall be deemed to abridge or alter in any way the right of either party to conduct discovery concerning individualized liability and damages issues and defenses to those matters after the conclusion of the trial or trials of common issues. The trial or trials of individualized liability and damages issues and defenses to those matters shall be deferred until after the initial phase(s) of trial.

In accordance with this Order, neither party is permitted to conduct discovery concerning any of the plaintiffs' individualized claims until after resolution of the common issues trial. Therefore, the Joint Scheduling Order greatly limits the ability to file summary judgment motions concerning individual claims until this time. Paragraph 17 provides:

17. *Dispositive Motions.* Dispositive motions shall be filed sixty (60) days before the trial commencement date to be select-ed.... As the Court does not contemplate that individualized discovery of Plaintiffs' claims or damages and defenses to those matters will be conducted until following the trial or trials of common issues, additional dispositive motions, by either party, shall be filed pursuant to a schedule to be established following the determinations at that trial or trials. Nothing in this paragraph shall be deemed to prevent any party from filing such motions prior to such trial.

When taken together, Paragraphs 4 and 17 permit either party to file dispositive motions concerning individualized claims or defenses only if the non-moving party would not need individualized discovery to oppose such a motion. As plaintiffs have not had an adequate opportunity for discovery with respect to the individualized claims in this case, First Union's motions for summary judgment on the individual ADEA and DCHRA claims must be denied.[3]

2. Determining the Applicable Legal Standard

■ Even if plaintiffs could not benefit from further discovery in their individualized claims, summary judgment would be inappropriate because the applicable legal standards governing these claims of discrimination will not be decided by this court until after plaintiffs' collective action trial. First Union has moved for summary judgment on plaintiffs' individual claims and has relied on the analytical framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). However, as will be shown, the *McDonnell Douglas* approach will not apply unless plaintiffs fail

2. First Union argues in a footnote that plaintiffs Hymavathi Nair and Donna Diewald lack standing to assert claims under the DCHRA. This issue has not been adequately briefed by the parties and therefore, the court will not decide the issue at this time.

3. With respect to Plaintiff Donna Diewald, First Union contends that additional discovery is unwarranted because of language included in this court's memorandum opinion of August 12, 1997. Specifically, the opinion referred to a separate memorandum opinion and order issued on August 12, 1997, whereby the court refused to allow plaintiffs leave to add the claims of Paula Wein because she had never spoken with any First Union employee, nor had she alleged that First Union had taken any action against her. The language in that opinion should not be construed as prohibiting claims of plaintiffs solely on the basis of whether a particular applicant had spoken with any First Union employees prior to the adverse employment decision at issue. The pivotal inquiry is whether the individual alleges that First Union took any employment action with respect to any given individual. It is presently unclear whether First Union took any such action against Donna Diewald regardless of whether she had contact with any First Union employees, and thus, First Union's argument on this issue is without merit.

to establish a pattern or practice of discrimination in their collective action under the standard articulated in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

As stated, plaintiffs assert claims of discrimination under both the ADEA and the DCHRA. For purposes of this case, the same structural legal analysis applies to both of these statutes. *Goss v. George Washington University,* 942 F.Supp. 659, 661 n. 1 (D.D.C.1996) (citing *Miller v. American Coalition of Citizens with Disabilities,* 485 A.2d 186, 189 (D.C.1984) (adopting federal employment discrimination standards to analyze similar claims under the ADEA)).

Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or discharge any individual ... because of age." 29 U.S.C. § 623. In discrimination cases where the disparate treatment of a single employee is at issue, a plaintiff may prove age discrimination in one of two different ways: the plaintiff may either produce direct or circumstantial evidence that age was the determining factor in the adverse employment decision, or utilize the indirect, burden shifting method of proof for Title VII cases originally set forth in *McDonnell Douglas,* as applied in the context of the ADEA. To establish a prima facie case of age discrimination under the ADEA using the *McDonnell Douglas* approach, the plaintiff "must demonstrate facts sufficient to create a reasonable inference that age discrimination was a determining factor in the employment decision." *Hayman v. National Academy of Sciences,* 23 F.3d 535, 537 (D.C.Cir.1994) (quoting *Cuddy v. Carmen,* 694 F.2d 853, 856–57 (D.C.Cir.1982)). A plaintiff meets this burden by showing that: (1) the plaintiff is a member of the statutorily protected age group; (2) the plaintiff was qualified for the position in question; (3) despite being qualified, the plaintiff was the target of an adverse employment decision; and (4) the position at issue remained open and was subsequently filled by a younger employee. *Id.*

Once the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination is created and a burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. When the defendant satisfies the burden of producing such evidence, the plaintiff must produce evidence showing that the defendant's proffered reason is a pretext for discrimination. *Paquin v. Federal National Mortgage Association,* 119 F.3d 23, 26–27 (D.C.Cir.1997). Upon making this showing of pretext, the trier of fact is permitted, although not compelled, to infer that the real reason for the adverse employment decision was age. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). For summary judgment purposes, a non-moving plaintiff must produce evidence from which a rational fact finder could infer that the employer's proffered reasons were pretextual and that the employer instead relied on some discriminatory motive.

■■■ An analogous analytical framework applies to an ADEA action brought by either a collective group or an individual plaintiff alleging a pattern or practice of disparate treatment. Plaintiffs who raise a collective claim of pattern or practice discrimination have as their initial burden the task of demonstrating that unlawful discrimination has been the regular policy of the employer or that discrimination was the employer's regular practice. *Teamsters,* 431 U.S. at 336, 97 S.Ct. at 1854–55. Plaintiffs meet this burden by either producing direct or circumstantial evidence that their employer effectuated a pattern of discriminatory, age-based decision making, or by utilizing a burden shifting method of proof, similar to that articulated in *Teamsters.*

■■■ When plaintiffs rely on the burden shifting approach established in *Teamsters,* pattern or practice discrimination actions are generally bifurcated at trial into two parts: a liability phase, where plaintiffs must prove that the employer instituted a discriminatory policy by a preponderance of the evidence, and a remedial phase, where the scope of relief awardable to each individual plaintiff is determined. *Teamsters,* 431 U.S. at 361, 97 S.Ct. at 1867–68. In the liability stage, plaintiffs must show that "unlawful discrimination

has been a regular procedure or policy followed by an employer or a group of employers." *Id.* at 360, 97 S.Ct. at 1867. In other words, in order to prove a pattern or practice of discrimination, plaintiffs must prove that unlawful discrimination is "the company's standard operating procedure." *Id.* at 366, 97 S.Ct. at 1870. At this stage, plaintiffs need not offer evidence that each person for whom they will ultimately seek relief was a victim of the employer's discriminatory policy. Their burden is to establish a prima facie case that such a policy existed.

■ The defendant may challenge the plaintiffs' proof through cross-examination and the presentation of rebuttal evidence in an effort to show that the plaintiffs' proof is either inaccurate or insignificant. However, throughout this stage of the proceedings, the plaintiffs retain the burden of persuasion as to establishing a prima facie case of pattern or practice age discrimination. *Teamsters,* 431 U.S. at 360, 97 S.Ct. at 1867.

■ At the termination of the liability phase of trial, the finder of fact must determine whether the plaintiffs have met their burden of establishing by a preponderance of evidence that the defendant engaged in a pattern or practice of age discrimination. If it is determined that the employer did not engage in such a pattern or practice, then trial of the collective claims is completed and plaintiffs may pursue individual discrimination claims. Alternatively, the court may award prospective relief to the plaintiffs if the finder of fact determines that the employer did engage in such a pattern or practice of discrimination. *Teamsters,* 431 U.S. at 361, 97 S.Ct. at 1867–68. The case then moves to the remedial stage of the trial to determine the individual relief to which plaintiffs may be entitled.

■ Upon entering the remedial stage of the trial, "[t]he proof of the pattern or practice supports an inference that any particular employment decision during the period in which the discriminatory policy was in force was made in pursuit of that policy," *Teamsters,* 431 U.S. at 362, 97 S.Ct. at 1868, and it is presumed that each individual plaintiff has been the victim of age discrimination

at the hands of the defendant. *Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 875–76, 104 S.Ct. 2794, 2799–2800, 81 L.Ed.2d 718 (1984) (discussing the presumption in the context of Title VII). Thus, the presumption of discrimination shifts to the defendant the burden of demonstrating that the individual plaintiffs were not victims of the discriminatory practice. *Teamsters,* 431 U.S. at 362, 97 S.Ct. at 1868. The defendant bears not only a burden of production but also the burden of persuading the trier of fact that it is more likely than not that the employer did not unlawfully discriminate against the individual. Therefore, the *Teamsters* approach can be distinguished from the traditional *McDonnell Douglas* analysis as the burden of persuasion can shift from plaintiffs to the defendant.

■ Unlike the burden shifting approach adopted in *McDonnell Douglas,* the analytical framework developed in *Teamsters* imposes no burden on the plaintiffs to produce evidence that the defendant's proffered explanations for the adverse employment decisions are merely pretextual. To the contrary, the burden of persuading the fact finder that age discrimination was not a determining factor in each of the defendant's employment decisions remains with the defendant throughout this phase of the trial. *Teamsters,* 431 U.S. at 362, 97 S.Ct. at 1868. Thus, assuming plaintiffs bring both individual and collective pattern or practice claims of discrimination, the applicable legal standards will not be known until after the finder of fact considers the collective action.

■ Where individual and collective claims are brought contemporaneously, as in the instant case, courts should consider the collective claim prior to turning their attention to the individual claims due to the fact that if the collective claim has merit, the named and unnamed individual class members are entitled to the burden-shifting presumption of *Teamsters.* The court's decision to grant plaintiffs' motion to proceed collectively in this case is consistent with this approach. Accordingly, the Court shall deny First Union's motions for summary judgment as to the plaintiffs' individualized discrimination claims under the ADEA and DCHRA.

Summary judgment is appropriate only where there is no dispute as to material facts and the materiality of such facts is determined by the applicable legal standard. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Consideration of First Union's motions for summary judgment with respect to plaintiffs' claims brought under the ADEA and the DCHRA is, therefore, inappropriate at this time, as the court will not decide the applicable legal standards in this case until after resolution of plaintiffs' collective action. A determination that First Union engaged in a pattern or practice of discrimination entitles plaintiffs to the burden shifting presumption of *Teamsters,* thereby requiring First Union to prove by a preponderance of evidence that age discrimination was not a determining factor in any particular adverse employment determination. Presumably, because the burden of persuasion may shift to First Union under the *Teamsters* analysis, but not under the *McDonnell Douglas* approach, a finding of pattern or practice discrimination eliminates the need to separately pursue individual discrimination claims. Under present circumstances, First Union's motions as to individual discrimination claims would require resolution under the *McDonnell Douglas* format.

Until completion of the liability stage of trial, then, First Union's motions for summary judgment as to individual discrimination claims brought by plaintiffs are premature. Consequently, the court will deny First Union's motions on these issues and will consider these arguments in subsequent proceedings only if required to do so pursuant to the jury's determination in the liability phase of the pattern or practice

### C. Plaintiff Hymavathi Nair's Section 1981 Claim

Hymavathi Nair is a citizen of India currently residing in the United States. Fourth Amended Complaint ¶ 158. She was employed by First American and then First Union continuously from 1982 until her termination in May 1993. *Id.* Nair alleges that

"First Union ... prevented [her], because of [her] national origin, from making employment contracts on the same basis and with the same freedom as is enjoyed by persons with origins in the United States," *id.* ¶ 1337, and thus, she asserts a claim of discrimination under 42 U.S.C. § 1981. First Union argues that claims of discrimination based solely on national origin are not actionable under Section 1981.[4]

Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981. By its terms, Section 1981 redresses only racial discrimination. However, the Supreme Court has held that the racial discrimination prohibited by Section 1981 includes intentional discrimination based solely on "ancestry or ethnic characteristics." *St. Francis College v. Al-Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582 (1987) (holding that Section 1981 did not protect plaintiff because of his place of origin, but that he was protected from "intentional discrimination based on the fact that he was born an Arab"). Thus, in order to prove racial discrimination within the meaning of Section 1981, a plaintiff must prove that she was discriminated against on the basis of her ancestry or ethnic characteristics and not solely on the place or nation of her origin. In some cases, though, courts have recognized that a national origin claim may proceed if an allegation of race discrimination is reasonably inferable from the pleadings. *See, e.g., Ekandem v. District of Columbia,* 1994 WL 721490 (D.D.C. Dec.22, 1994) (finding valid Section 1981 claim where plaintiff stated that he was discriminated against because of his national origin, but referred to himself as an "African and a black" throughout his complaint).

Despite the broad interpretation of race-based discrimination under Section 1981, in the instant case, even the most liberal construction of Nair's complaint demonstrates that she is alleging nothing more than a claim of discrimination based on her national

---

4. Although First Union has labeled their motion as one for summary judgment, it is in effect a motion to dismiss for failure to state a claim, and no discovery is needed to determine the question presented.

origin. This is evidenced by the very language of her complaint in which she compares her treatment with the treatment received "by persons with origins in the United States." Fourth Amended Complaint ¶ 337. The distinction drawn by Nair is clearly one drawn along lines of national origin and nothing on the record suggests otherwise. Accordingly, defendants' motion for summary judgment with respect to plaintiff's claim of discrimination brought pursuant to Section 1981 is granted.

## III. Conclusion

For these reasons, the court will deny First Union's motions for summary judgment on the ADEA and DCHRA claims of Hymavathi Nair, Donna L. Diewald, and Luther Dorsey and grant First Union's motion for summary judgment on the Section 1981 claim of Hymavathi Nair.